**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN G.,<br><br>*Plaintiff*,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>*Defendant*. | Case No. 24-cv-06156<br><br>Hon. Beth W. Jantz |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security terminating Plaintiff John G.'s[1] Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. This case was assigned to the Hon. Beth W. Jantz in accordance with Local Rule 73.1(c). (Dkt. 9.) For the reasons stated below, Plaintiff's Motion for Summary Judgment (Dkt. 14) is GRANTED, and the Commissioner's Motion for Summary Judgment (Dkt. 20) is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

## BACKGROUND

Plaintiff John G. was found disabled on February 1, 1994, based on liver cancer, and he received disability benefits thereafter. (R. 237.) The Social Security Administration (the "Agency") continued his disability status following treatment, which included a liver transplant, in 2000 and again in October 2007. (*Id.*) In July 2013, during a continuing disability review ("CDR"), the Agency documented that the prior file was lost, determined not to reconstruct it, and

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by his first name and the first initial of his last name.

continued benefits.[2] (*Id.* at 237, 667.) During the 2013 review, the Agency noted "no significant lab abnormalities" in the CPD documentation. (*Id.* at 667.)

The Agency initiated another CDR in 2018, and in January 2019 conducted interviews and consultative examinations. (R. 237.) On June 4, 2019, the Agency found Plaintiff's conditions had improved and terminated benefits. (*Id.* at 174 –76.) Plaintiff requested reconsideration of the cessation on July 1, 2019, which was denied on March 17, 2020. (*Id.* at 224–26, 236–41.) Plaintiff subsequently requested an administrative hearing, which was held on July 26, 2022. (*Id.* at 180, 250–53.) The ALJ issued an unfavorable decision on August 30, 2022, following the hearing. (*Id.* at 177–79.) The ALJ's 2022 decision recounted that "at the CPD in 2013 the prior file could not be found and pursuant to 20 CFR 404.1594(v) [sic] the relevant parts of the prior record were not reconstructed; therefore, medical improvement could not be found, and the claimant's disability continued," and added that "the documentation of the claimant's current impairments now provides the basis for the current CDR." (*Id.* at 185.) Plaintiff appealed and the Appeals Council remanded as the ALJ's decision had incorrectly evaluated opinion evidence pursuant to the Agency's current rules (20 C.F.R. §§ 404.1520c and 416.920c) rather than the Agency's prior rules (20 C.F.R. §§ 404.1527 and 416.927). (*Id.* at 202–03.)

Following remand, a second hearing was held on October 17, 2023, and the ALJ issued another unfavorable decision on December 1, 2023, which is at issue here. (R. 12–14, 38–85.) In the ALJ's opinion, the ALJ applied the eight-step CDR evaluation framework required for Title II claims.[3] (*Id.* at 16); 20 C.F.R. § 404.1594. At step one, the ALJ found that Plaintiff had not engaged

---

[2] This July 25, 2013 favorable determination serves as the comparison point decision ("CPD") for the CDR at issue. (R. 17.)

[3] The evaluation steps for Title II and Title XVI claims are largely identical, except 20 C.F.R. § 416.994 (related to Title XVI claims) does not inquire as to whether the claimant is engaged in substantial gainful activity. Thus, while the ALJ's opinion cross-references both regulatory

in substantial gainful activity through the date of decision. (R. 17.) At step two, the ALJ found medically determinable impairments of status post liver transplant with immunocompromised state, neuropathy, depressive disorder, and generalized anxiety disorder, and found that his current impairments did not meet or equal a listing. (*Id.* at 17–20.) At step three, the ALJ determined medical improvement occurred as of June 1, 2019. (*Id.* at 20–22.) At step four, the ALJ found that the medical improvement was related to the ability to work because it resulted in an increase in residual functional capacity ("RFC"). (*Id.* at 22.) For step five, because the ALJ had determined that the medical improvement related to the ability to work, the ALJ was not required to engage with this step. (*Id.* at 20–22.) At step six, the ALJ found that Plaintiff continued to have a severe impairment or combination of impairments, specifically status post liver transplant and immuno-compromised state, depressive disorder, and generalized anxiety disorder, while finding folliculitis on the legs and neuropathy non-severe. (*Id.* at 22.) At step seven, the ALJ assessed an RFC for work at all exertional levels with nonexertional limitations: avoid concentrated exposure to extreme cold, heat, wetness, humidity, and pulmonary irritants; no work in medical facilities; no fast-paced production rate or strict hourly quotas but able to meet end-of-day requirements; and ability to adapt to occasional simple, routine workplace changes. (*Id.* at 22–27.) At step eight, relying on this RFC and vocational expert testimony, the ALJ found there were significant numbers of jobs in the national economy that Plaintiff could perform and concluded that disability ceased as of June 1, 2019. (*Id.* at 28.)

Plaintiff again sought Appeals Council review. (R. 7–8.) The Appeals Council denied review on May 20, 2024, rendering the December 1, 2023 ALJ decision the Commissioner's final

---

constructions, for the sake of brevity and clarity this opinion will only refer to the eight-steps required for Title II claims, found under 20 C.F.R. § 404.1594.

decision terminating Plaintiff's benefits under Title II and Title XVI. (*Id.* at 1–3.) The matter is now before this Court for judicial review. (*See generally* Dkt. 1.)

**DISCUSSION**

## I. Standard of Review

The Court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence. *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024). Substantial evidence "'means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019)). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). While reviewing the Commissioner's decision, the Court "'will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Warnell*, 97 F.4th at 1052–53 (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). On the other hand, the Court cannot let the Commissioner's decision stand if it lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also* 42 U.S.C. § 405(g).

## II. The ALJ's Medical Evidence Comparison Was Improper

Plaintiff raises two principal challenges to the ALJ's decision. Plaintiff contends that the ALJ erred by: (1) failing to conduct a proper medical-improvement analysis; and (2) failing to incorporate into the RFC a moderate limitation in the ability to concentrate, persist, or maintain pace. (*See* Dkt. 14 at 7.) As discussed below, because the ALJ's failure to conduct the proper

comparison of medical evidence between the CPD and CDR alone warrants remand, the Court will not address, and thus makes no ruling on, Plaintiff's other principal argument.

Cessation cases, such as this one, are governed by the medical-improvement framework set forth in 20 C.F.R. §§ 404.1594 and 416.994.[4] When a claimant has been deemed disabled, as Plaintiff has been here, the Agency "must periodically conduct a continuing disability review to determine if the benefits recipient remains eligible." *Fitschen v. Kijakazi*, 86 F.4th 797, 803 (7th Cir. 2023); 20 C.F.R. §§ 404.1589, 416.989. Under this procedure, before the Agency can terminate benefits it must establish "medical improvement," defined as "any decrease in the medical severity of [the] impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i). This most recent decision in the claimant's favor is referred to as the CPD. *Id.* Medical improvement is demonstrated by changes "in the symptoms, signs, and/or laboratory findings" associated with the impairment(s). *Id.* Thus, in conducting a CDR, the ALJ compares "the severity of the individuals' current medical condition(s) to the severity of the most recent favorable medical decision (i.e., comparison point decision (CPD))." SSA Program Operations Manual System ("POMS") DI 28035.001(A).

The regulations, therefore, require more than a summary of current medical evidence or a finding that a claimant presently appears capable of work. Medical improvement must be established through a comparison of the medical findings associated with the impairments present at the CPD and the findings present at the time of the CDR. 20 C.F.R. §§ 404.1594(c)(1), 416.994(b)(2)(i). Courts within this Circuit have repeatedly recognized that an ALJ must compare

[4] These are parallel regulations that are largely identical. 20 C.F.R. § 404.1594 governs SSDI benefits, while § 416.994 governs SSI benefits.

the specific medical findings present at the CPD with those present at the CDR. *See Kimberly T. v. Saul*, No. 19 C 487, 2019 U.S. Dist. LEXIS 203924, at *4–5 (N.D. Ill. Nov. 25, 2019) (remanding where the ALJ determined medical improvement occurred without conducting a proper comparison of signs and symptoms); *Christine N. v. Kijakazi*, No. 19 CV 2171, 2022 U.S. Dist. LEXIS 27823, at *16 (N.D. Ill. Feb. 16, 2022) (remanding where "the ALJ [did] not discuss [the CPD's] findings or how they compare to Claimant's current level of impairment").

The ALJ's decision does not perform that comparison in a meaningful way in this case. The ALJ's decision notes that as of September 2012, Plaintiff's examination findings were "within normal limits" and that he had no significant illnesses or treatment in the preceding years. (R. 21.) Notably, this is the decision's ***only*** reference to the CPD, which the Commissioner also tacitly concedes in stating, "the ALJ's singular notation to a record prior to the July 2013 CPD, a September 2012 record, is not as egregious as Plaintiff claims." (Dkt. 21 at 6.) The decision then proceeds to cite largely normal findings from the 2019 consultative examination, concluding finally that "there had been a decrease in medical severity of the impairments present at the time of the CPD." (R. 21.) Missing from the ALJ's analysis, critically, is any identification of the specific symptoms, signs, or laboratory findings that established the baseline level of medical severity at the CPD. *See* 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i). Without the ALJ having properly engaged with the CPD findings, the Court cannot determine whether the ALJ actually *found* any decrease in medical severity, as was required, or instead concluded only that, based on the current record, Plaintiff would not be considered disabled under the regulations.

This deficiency in the ALJ's opinion is compounded by the circumstances surrounding the CPD at issue. During the 2013 review, the Agency's prior file could not be located and Dr. Foster decided not to reconstruct the evidence. (R. 667.) And, in accordance with 20 C.F.R. §§

404.1594(c)(3)(v) and 416.994(d), because the prior record was not reconstructed, Plaintiff's benefits were continued. Even though the record was not reconstructed at the CPD, the regulations nevertheless provide that "[t]he documentation of your current impairments will provide a basis for any future reviews." 20 C.F.R. §§ 404.1594(c)(3)(v), 416.994(d). The ALJ's decision at issue, however, identifies almost no CPD-level medical findings beyond noting that Plaintiff's examinations were already "within normal limits." (R. 21.) If the CPD findings were normal and the CDR findings were likewise normal, the decision needed to explain what had medically improved between the two periods; the ALJ was not at liberty to simply rely on normal findings at the CDR as proof of medical improvement or construct a record of the ALJ's own choosing to supply the missing comparison. *Smith v. Berryhill*, No. 16 CV 9976, 2018 U.S. Dist. LEXIS 97365, at *14 (N.D. Ill. June 11, 2018) (remanding where it was "difficult to determine whether the ALJ made a proper comparison of the previous records and the current records"). While there may be circumstances in which an ALJ can "fill the gaps with appropriate medical evidence when necessary in conducting a CDR," neither the ALJ nor the Commissioner has identified any sufficient reason to do so here, (Dkt. 21 at 3–8; R. 21–22). *Robbie S. v. Bisignano*, No. 24 C 11615, 2026 U.S. Dist. LEXIS 38607, at *5–7 (N.D. Ill. Feb. 25, 2026).

The ALJ's decision is further deficient in its reliance on differences in RFC assessments, rather than the requisite analysis of signs, symptoms, and laboratory findings. The Commissioner emphasizes the ALJ's finding that in 2013, "Dr. Foster assessed a medium RFC," while later examiners identified no exertional limitations. (Dkt. 21 at 4–5, 7; R. 17, 667.) The regulations and agency guidance distinguish, however, between medical findings and administrative assessments, such as an RFC. POMS DI 28010.015(D)(1) instructs ALJs not to determine medical improvement by "formally assessing current severity, and then comparing current severity to the prior

assessment made by the CPD adjudicator." POMS DI 28010.015(D)(1) ("The RFC and other aforementioned assessments provide administrative medical findings of fact. This is not to be confused with the medical findings in the evidence, such as signs and laboratory findings."). Instead, an ALJ must evaluate whether there were changes in the underlying findings, i.e., signs, symptoms, or laboratory findings. *Id.* The distinction is material here because the medium RFC that Dr. Foster assessed in 2013 appeared largely based on "transplant history," rather than on documented abnormal findings demonstrating ongoing medical severity. (R. 667.) A comparison of RFC assessments cannot substitute for the comparison of medical findings required by the regulations.[5] *See* 20 C.F.R. §§ 404.1594(c)(1), 416.994(b)(2)(i).

The Commissioner also points to numerous benign findings from the current record, including intact strength, normal gait findings, and the absence of exertional limitations. (Dkt. 21 at 6–7; R. 736–40.) Those findings may bear on Plaintiff's current level of functioning, but they do not cure the absence of the required CPD-to-CDR comparison. The Court's review is limited to the reasons the ALJ actually gave, not post hoc rationales offered later in litigation. *See Hejna v. Bisignano,* No. 19-cv-5998, 2025 U.S. Dist. LEXIS 168874, at *4 (N.D. Ill. Aug. 29, 2025).

Accordingly, remand is required. On remand, the Commissioner should apply the proper medical-improvement framework, identify the symptoms, signs, and laboratory findings associated with the CPD, and compare those findings to the evidence from the CDR period. Without that

[5] The Commissioner's argument relies heavily on evidence that Plaintiff had no recurrent cancer, metastasis, or transplant rejection and generally had benign examination findings during the CDR period. (Dkt. 21 at 3–4; R. 21–22.) But much of that reasoning compares Plaintiff's condition during the CDR period to his condition around the time of his liver cancer and transplant in 2004, rather than to the findings present at the 2013 CPD. (R. 26.) Again, the relevant inquiry is whether the impairments present at the 2013 CPD medically improved by the time of the 2019 CDR. As discussed above, such improvement must be demonstrated by changes in symptoms, signs, or laboratory findings, and neither the ALJ nor the Commissioner identifies such evidence. (Dkt. 21 at 3–8; R. 21–22.)

sort of analysis, the Court is unable to determine how the ALJ measured any change in medical severity or whether the finding of medical improvement complied with 20 C.F.R. §§ 404.1594 and 416.994.

This deficiency also cannot be dismissed as harmless error, because the missing CPD-to-CDR comparison is the very analysis needed to determine whether medical improvement occurred. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (for an error to be harmless, a court must be able to "predict with great confidence what the result on remand will be").

To be clear, in concluding that this issue requires remand, the Court makes no determination as to whether Plaintiff remained disabled or whether the Commissioner could establish medical improvement on remand. The Court holds only that the ALJ failed to articulate in the decision the required comparison between the CPD findings and the CDR findings. In light of the Court's decision to remand on that issue, the Court need not address Plaintiff's remaining argument. The Commissioner should not, however, construe the Court's silence as an indication that the ALJ's initial adjudication was appropriate as to any outstanding issues.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Dkt. 14) is GRANTED, and the Commissioner's Motion for Summary Judgment (Dkt. 20) is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

SO ORDERED.

DATED: September 30, 2026

HON. BETH W. JANTZ
U.S. Magistrate Judge